UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| S.R., a minor by and through his guardian ad litem, JESSICA JUAREZ, | NO. 4:16-CV-5112-TOR |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| PASCO SCHOOL DISTRICT and RATREE ALBERS, | |
| Defendants. | |

BEFORE THE COURT is Defendants' Motion for Summary Judgment (ECF No. 19). This matter was submitted for consideration without oral argument. The Court has reviewed the motion, the record and files herein, and is fully informed. For the reasons discussed below, Defendants' Motion for Summary Judgment (ECF No. 19) is **GRANTED in part** and **DENIED in part**.

//

//

**BACKGROUND**

Plaintiff S.R., a minor by and through his guardian ad litem Jessica Juarez, commenced this action on August 15, 2016, alleging that S.R. was subjected to "ongoing verbal, psychological and physical abuse" while attending Robert Frost Elementary. *See* ECF No. 1 at ¶¶ 13–14. Plaintiff's remaining claims[1] at issue in Defendant's Motion include 42 U.S.C. § 1983 claims against Defendant Ratree Albers (Ms. Albers) and the Pasco School District (District) for violating Plaintiff's Fourth Amendment rights. Plaintiff also asserts a disability discrimination claim against the District under the Americans with Disabilities Act of 1990 (ADA) and the Rehabilitation Act of 1973 (§ 504). ECF No. 30 at 2.

Defendants move for summary judgment on all remaining claims. ECF No. 19 at 3. Plaintiff contends there are genuine issues of material fact for each remaining claim. ECF No. 30 at 2.

**FACTS**

The following are the undisputed facts unless otherwise noted. S.R. was

---

[1] Defendants previously filed a Motion to Dismiss Plaintiffs' Claims Against the Individually-Named Defendants in their Official Capacities and Plaintiffs Ivan Romero and Jessica Juarez's § 1983 Claims pursuant to Fed. R. Civ. P. 12(b)(6), which was unopposed by Plaintiffs and granted by this Court. ECF. No. 8.

diagnosed with autism, qualifying him for special education. ECF Nos. 31 at ¶¶ 6–8; 20 at ¶¶ 1–2. In November 2013, S.R. was transferred to Robert Frost Elementary to attend a special education class taught by Ms. Albers. ECF Nos. 31 at ¶¶ 12–13; 20 at ¶ 7. S.R.'s mother alleges that his behavior and attitude changed dramatically after transferring schools, noting he was more worried, frustrated, mad, and unusually quiet. ECF No. 31 at ¶¶ 20–22. After transferring out of Robert Frost in April 2014, S.R.'s mother claimed he returned to "his normal happy-go-lucky self immediately." *Id.* at ¶¶ 13, 26.

In February 2014, a complaint was made against Ms. Albers for allegedly hitting another student in the back and allowing a female student to pinch the student. ECF Nos. 20 at ¶¶ 15–16; 31 at ¶¶ 27–28. Defendants state that the District reported these allegations to law enforcement, which determined that no criminal acts occurred. The District found in its own investigation that the allegations were unfounded. ECF No. 20 at ¶¶ 17–18. Plaintiff contends that the District failed to discipline Ms. Albers after placing her on administrative leave for ten days. ECF No. 31 at ¶¶ 36–38.

In March 2014, Plaintiff alleges that S.R. was afraid of a particular book, which Ms. Albers used to get him to sit down and listen. *Id.* at ¶ 30. Defendants argue that there is no evidence of Ms. Albers using a book to scare S.R. ECF Nos. 19 at 11; 20 at ¶ 35. Feliz Liudahl, a para-educator with special education students

at Robert Frost Elementary, affirmed in her deposition that she saw Ms. Albers grab an ocean book that scared S.R. and put it in his face to get him to sit down. ECF Nos. 1 at ¶ 31; 32-1 at 7, 11. Additionally, Plaintiff asserts that Ms. Albers would yell at the students and slam her hand down on the table. ECF No. 31 at ¶ 31. Defendants emphasize that Ms. Albers observed other teachers hit their hands on a desk and speak loudly to get students' attention. ECF Nos. 19 at 12, 20 at ¶ 36. Ms. Liudahl stated that she had seen other teachers act that way toward students. ECF Nos. 20 at ¶ 36; 32-1 at 8.

Plaintiff claims that, on several occasions, when S.R. would try to stand up, Ms. Albers would push him into the table so that he could not get out. ECF No. 31 at ¶ 41. Plaintiff states that S.R. had bruises on his thighs, which were consistent with being forcefully pushed forward into a table and consistent with the timeframe. *Id.* at ¶ 60. S.R.'s father claims he had never noticed bruises on S.R. before the transfer of schools and has not seen any bruises since S.R. transferred out of Robert Frost Elementary. *Id.* at ¶ 23. Plaintiff's father took pictures of the bruising. ECF No. 32-4 at 6. Defendants contend that any bruising on S.R.'s shins and thighs was a "one-time" thing and S.R.'s parents never shared photos or information about the bruising. ECF No. 20 at ¶ 40. Defendants claim, "It can hardly be said this observation is indicative of any type of event that occurred in Ms. Albers's classroom as opposed to elsewhere." *Id.*

On April 7, 2014, S.R was not staying on task and Ms. Albers took him to the bathroom. ECF Nos. 31 at ¶¶ 45–47; 20 at ¶¶ 20–21. Plaintiff claims Ms. Albers grabbed S.R. hard by the upper arm and completely closed the door with the lights remaining off inside the bathroom for three minutes. ECF No. 31 at ¶¶ 47–50. When S.R. came out of the bathroom he was quiet, which was unusual and indicated he was upset. *Id.* at ¶ 54. Defendants disagree and state that Ms. Albers took S.R. to the bathroom so she could help him wash snot off his hands and face. ECF No. 20 at ¶¶ 20–21. She kept the bathroom light off because S.R. was already overly stimulated and the bathroom door was ajar to let in ambient light from the classroom. *Id.* at ¶ 22. Defendants contend that at no time did S.R. act like he was in distress. *Id.* at ¶ 23.

Ms. Liudahl asserted in her deposition that no student in the classroom required assistance in going to the bathroom and she had never taken a student to wash their hands. ECF No. 32-1 at 3. She also stated that when Ms. Albers took S.R. to the bathroom, "It was just awkward because I had never seen her go into the bathroom with any of the students. And she had went in there and shut the door but the light was not on." *Id.* Ms. Liudahl knew the light was not on because she could see a gap underneath the bathroom door. *Id.* She affirmed that the light was off for about three minutes and the door was fully closed. *Id.* at 6. After three

minutes, the light turned on and Ms. Liudahl heard Ms. Albers tell S.R. to wash his hands. *Id.*

In April 2014, S.R. withdrew from Robert Frost Elementary. ECF Nos. 20 at ¶ 43; 31 at ¶ 13.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is "genuine" where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The moving party bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *Anderson*, 477 U.S. at 256.

In ruling on a motion for summary judgment, the court views the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). There must be evidence on which a jury could reasonably find for

the plaintiff and a "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## A. § 1983 Claims

Plaintiff alleges that Defendants violated S.R.'s Fourth Amendment right to be free from unreasonable seizures and the use of unreasonable force. ECF No. 30 at 5. Under § 1983, a cause of action may be maintained "against any person acting under color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws,' of the United States." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (quoting 42 U.S.C. § 1983). The rights guaranteed by § 1983 are "liberally and beneficially construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 684 (1978)).

### 1. Ms. Albers

Defendants contend that Ms. Albers is entitled to qualified immunity. ECF No. 19 at 4. Qualified immunity shields government actors from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity balances the two important interests of holding public officials accountable when they exercise power irresponsibly and also the need to shield officials from harassment, distraction, and liability when

they perform their duties reasonably.  *Id.*  When this immunity is properly applied, "it protects all but the plainly incompetent or those who knowingly violate the law."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In determining a state actor's assertion of qualified immunity, a court must assess (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right; and (2) whether the right was clearly established at the time of the alleged violation such that a reasonable person in the defendant's position would have understood that his actions violated that right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236.  A court may, within its discretion, decide which of the two prongs should be addressed first in light of the particular circumstances of the case.  *Pearson*, 555 U.S. at 236.  If the answer to either inquiry is "no," then the defendant is entitled to qualified immunity and may not be held personally liable for his or her conduct.  *Glenn v. Washington County*, 673 F.3d 864, 870 (9th Cir. 2011).

### a.  Constitutional Violations

When viewed in the light most favorable to Plaintiff, the Court finds Ms. Albers conduct could support a finding that she violated Plaintiff's constitutional rights under the Fourth Amendment.  The right to be free from unreasonable

seizures "extends to seizures by or at the direction of school officials." *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003) (quoting *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir. 1995). A seizure occurs when "there is a restraint on liberty to the degree that a reasonable person would not feel free to leave." *Id.* (citing *United States v. Summers*, 268 F.3d 683, 686 (9th Cir. 2001)). Such a seizure violates the Fourth Amendment when "it is objectively unreasonable under the circumstances." *Id.* (citing *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)). In the school context, the reasonableness of a seizure is considered in light of the educational objectives the school official was trying to achieve. *Id.* Reasonableness is assessed "in light of the age and sex of the student and the nature of the infraction." *Preschooler II v. Clark Cty. Sch. Bd. Of Trustees*, 479 F.3d 1175, 1180 (9th Cir. 2007) (citation and quotation omitted). Additionally, force is analyzed under the reasonableness standard and excessive force by a school official "against a student violate[s] the student's constitutional rights." *Id.* (quoting *P.B. v. Koch*, 96 F.3d 1298, 1302–03 (9th Cir. 1996)).

Here, Plaintiff contends that Ms. Albers seized S.R. by grabbing his arm, escorting him to the bathroom, and closing the door. ECF No. 30 at 6. Plaintiff argues that under such circumstances, "no reasonable seven-year-old student with severe autism … would believe he was free to leave." *Id.* Defendants assert that there is no evidence Ms. Albers physically dragged S.R. to the bathroom or

invoked her authority as a teacher to unreasonably restrain him. ECF No. 19 at 10. She merely escorted S.R. to the bathroom to help him wash snot off his face and hands. *Id.* Yet, Defendants misconstrue the standard that constitutes a seizure. When viewing the facts in the light most favorable to Plaintiff, a reasonable seven-year-old autistic child may well feel restrained in being taken to the bathroom by a teacher and having the door closed for three minutes in the dark, as Plaintiff alleges and Ms. Liudhal confirmed. While Ms. Albers may have had the educational objective of not over-stimulating S.R. with light, it is still not objectively reasonable under the circumstances considering S.R.'s age and disability. When viewed in the light most favorable to Plaintiff, the Court finds that Ms. Albers confining Plaintiff in a dark bathroom could be considered an unreasonable seizure.

Additionally, Defendants assert that there was no unreasonable restraint when Ms. Albers and other staff members would stand behind S.R. while he was seated. ECF No. 19 at 11. Defendants contend that this action was merely a teaching strategy. *Id.* It is unlikely that standing behind a child in a classroom is considered a seizure, but regardless, the seizure would be reasonable. The educational objective of assisting students with their work and helping them stay on task is a reasonable intention. Defendants also contend Ms. Albers slamming her hand on the desk would also not be an unreasonable seizure, as it was a

technique practiced by the teachers to gain the students' attention. *See* ECF Nos. 32-1 at 8; 19 at 12. Therefore, Ms. Albers standing behind S.R. or slamming her hand on a desk are not in and of themselves an unreasonable seizure, but when viewed in context and in light of all the evidence, her actions could be considered unconstitutional as shown below.

Defendants deny that Ms. Albers restrained S.R. and used a book to scare him. ECF No. 19 at 11. Yet, Plaintiff cites the deposition of Ms. Liudahl who confirmed that she witnessed Ms. Albers scare S.R. with an ocean book. ECF No. 32-1 at 7. Defendants are then incorrect and this claim can still form the basis of a § 1983 claim. *See* ECF No. 19 at 11. When viewed in the light most favorable to Plaintiff, Ms. Albers's use of the book could be considered an unreasonable seizure as it confined a young autistic child to his chair through the use of fear so that he reasonably felt he could not leave.

Lastly, Defendants argue that the bruising on S.R.'s legs is not enough to constitute excessive force or seizure.[2] *Id.* at 12. Defendants note that unexplained

---

[2]    Plaintiff does not address the issue of excessive force in the Response because he claims that excessive force was not addressed in Defendants' Motion for Summary Judgment. ECF No. 30 at 5 n.1. Yet, Defendants assert that they seek to dismiss all of Plaintiff's claims. ECF No. 41 at 1–2 n.1. Therefore, while

bruises or scratches do not rise to the level of a constitutional violation. *Id.*; *see*

*Preschooler II*, 479 F.3d at 1181. Defendants are correct that unexplained bruising

alone may be insufficient to substantiate excessive force, but Plaintiff provides

other evidence of Ms. Albers grabbing and pushing S.R., which could constitute

excessive force. ECF No. 32-1 at 6.

When viewing all the evidence in the light most favorable to Plaintiff, Ms.

Albers aggressive actions towards S.R. of grabbing him, confining him in a

bathroom, slamming her hand on a desk, pushing him into a table and frightening

him with a book reveals evidence which could be found to be an unreasonable

seizure and the use of excessive force beyond mere unexplained bruising.

### b. Clearly Established Law

Ms. Albers's constitutional violations must have been clearly established at

the time of the alleged harm. A right is clearly established when it is "sufficiently

clear a reasonable officer would understand that what he is doing violates that

right." *Anderson v. Creighton*, 438 U.S. 635, 640 (1987). A case need not be

directly on point, but existing precedent must have placed the constitutional

_____

Plaintiff does not address the use of excessive force in his Response, he asserts the

claim in the Complaint and Statement of Facts attached to the Response and so the

Court will still address this claim. *See* ECF Nos. 1; 31.

question beyond debate. *al-Kidd*, 563 U.S. at 741. The clearly established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201.

Here, Defendants argue that, in the school setting, courts have found unreasonable seizure when there was a clear use of physical force or a show of authority in restraining a student's liberty. ECF No. 19 at 8. Defendants cite an incident where a site administrator taped an eight-year-old student's head to a tree for five minutes, constituting an unreasonable seizure. *Id.*; *Doe*, 334 F.3d at 907–09. Defendants also note an unreasonable seizure of a special education student where the teacher grabbed the student's hand repeatedly, slapped him, hit his head and face, and body slammed him into a chair. ECF No. 19 at 8; *Preschooler II*, 479 F.3d at 1178. Yet, in the same case, making the student walk barefoot on asphalt did not rise to the level of a constitutional violation, as it was not unreasonable to teach the student not to remove his shoes. ECF No. 19 at 8–9; *Preschooler II*, 479 F.3d at 1181. Defendants argue such instances were not present in this case.

Plaintiff emphasizes that "the right of a student to be free from excessive force at the hands of teachers employed by the state was clearly established as early as 1990." *Doe*, 334 F.3d at 910 (citing *Koch*, 96 F.3d at 1303 n.4); ECF No. 30 at 8. The Ninth Circuit noted, "There need not be a case dealing with these

particular facts to find [Defendant's] conduct unreasonable." *Id.* While Ms.

Albers actions are not as physically extreme as the cases cited by Defendants, this

does not mean that the rights were not clearly established. A reasonable teacher in

Ms. Albers position would recognize that confining an autistic child in a bathroom

without turning on the lights for multiple minutes violates that child's rights. This

unique situation need not be exactly similar to a teacher body slamming a student

or tapping a child's head to a tree. If a jury were to find that Ms. Albers pushed

Plaintiff into a table so that he could not get out, slammed her hand on a desk to

frighten him, frightened him with a book and inflicted injury sufficient to cause

bruising, all these actions would also clearly violate a child's rights. Taken in light

of the specific context of a disabled child, a reasonable special education teacher

would be aware these were constitutional violations.

Therefore, Ms. Albers is not entitled to qualified immunity because the

conduct alleged would violate S.R.'s clearly established constitutional rights. The

Court denies Defendants' Motion for Summary Judgment as to Ms. Albers' alleged

conduct.

### 2. The District

Plaintiff alleges a § 1983 claim against the District for its alleged official

policy of sending teachers to the classroom without warning, training, or

disciplining the teacher despite a constitutional violation. ECF No. 30 at 11. To

prevail on a claim under § 1983 against a local government entity, a plaintiff must

prove that the entity violated his or her constitutional rights by engaging in an

"action pursuant to official municipal policy of some nature." *Monell*, 436 U.S. at

691–94 (concluding that § 1983 does not permit *respondeat superior* liability

against municipalities). To establish the official municipal policy, a plaintiff may

articulate any of the following four theories: (1) action pursuant to express policy

or longstanding practice or custom;[3] (2) action by a final policymaker acting in his

or her official policymaking capacity; (3) ratification of an employee's actions by a

final policymaker; and (4) failure to adequately train employees with deliberate

indifference to the consequences. *Christie v. Iopa*, 176 F.3d 1231, 1235–40 (9th

Cir. 1999). "Liability for improper custom may not be predicated on isolated or

sporadic incidents; it must be founded upon practices of sufficient duration,

frequency and consistency that the conduct has become a traditional method of

carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (citation

omitted).

---

[3]     Plaintiff alleges this first theory. ECF No. 30 at 9. Even though Defendants

argue against most of the following theories (ECF No. 40 at 3–7), only the first

theory will be addressed by the Court.

Here, Defendants contend that Plaintiff has failed to establish that Ms. Albers committed a constitutional violation or demonstrate any of the theories outlined above. ECF No. 19 at 15. Plaintiff asserts that Ms. Albers committed a constitutional violation pursuant to a formal government policy or long-standing practice or custom by the District. ECF No. 30 at 9. Plaintiff cites that the Principal, Nora Flores, was aware that Ms. Albers required one student to pinch another student, struck a student with a closed fist, required a student to slap another student's arm, and slammed her hand on the children's tables and yelled at them. *Id.* at 10. Plaintiff contends that Ms. Flores merely sent Ms. Albers back to work without disciplining her, providing her additional training, or reprimanding her. *Id.* at 11. Plaintiff argues that the District then had an official policy of sending teachers back to the classroom without taking any precautionary or preventative measures after a constitutional violation. *Id.*

As discussed above, Ms. Albers arguably violated S.R.'s constitutional rights, but Plaintiff fails to show Ms. Albers's actions were part of a larger District policy. After the pinching and closed fist incidents, the District reported the allegations to law enforcement and conducted its own investigation, both finding no misconduct. ECF Nos. 20 at ¶¶ 17–18; 32-6 at 5–6. These incidents by a single teacher are not enough to create sufficient duration, frequency, and consistency to constitute an official policy of not disciplining teachers. *See Trevino*, 99 F.3d at

918.  Additionally, Plaintiff fails to show that the District was deliberately indifferent to the constitutional right and the "moving force behind the constitutional violation." *Rivera v. Cty. of Los Angeles*, 745 F.3d 384, 397 (9th Cir. 2014) (quoting *Edgerly v. City & Cnty. of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010)).  There is no evidence that the District was deliberately indifferent to the students' constitutional rights after it investigated Ms. Albers and decided to return her to the classroom nor is there any evidence that the District and Ms. Flores were the driving force behind Ms. Albers constitutional violation of S.R.'s rights.  Plaintiff is then unable to establish an official policy by the District.

In Plaintiff's recently filed Trial Brief, and not in response to Defendants' Motion for Summary Judgment, Plaintiff contends the District is liable under the danger creation exception to liability for injuries caused by third parties.  ECF No. 59 at 7.  Plaintiff reasons that the District was aware of complaints about Ms. Albers abusing special needs children in her care, yet affirmatively returned her to the classroom.  While Plaintiff belated makes these allegations in his Trial Brief, he has not come forward with evidence to support this assertion, thereby preserving a genuine issue of material fact for trial.  Absent a genuine dispute as to any material fact, the Defendant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

Accordingly, Defendants' Motion for Summary Judgment is granted in part and Plaintiff's § 1983 claim against the District is dismissed.

**B. Disability Discrimination Claims**

Plaintiff brings claims under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq. (ADA) and under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (§ 504). ECF No. 30 at 11–12. According to Ninth Circuit precedent, "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act …. Thus, courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citation omitted). Courts also routinely look at Rehabilitation Act case law to interpret rights created by the ADA.[4] *Id.* A plaintiff must show under the ADA that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of a public entity's services, programs, activities, or otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Duvall v. Cty. of*

---

[4] The parties dispute whether these discrimination claims must be analyzed separately. ECF Nos. 30 at 12; 41 at 8. After careful review of the case law, the Court determines that the claims may be evaluated coterminously.

*Kistap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (citing *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)).  Title II of the ADA was modeled after § 504, where a plaintiff must show that (1) he is disabled; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance.  *Id.* (citation omitted).

Under both the Rehabilitation Act and Title II of the ADA, a public entity is liable for the vicarious acts of its employees.  *Duvall*, 260 F.3d at 1141.  The Ninth Circuit has "held that, under § 504 of the Rehabilitation Act (upon which the ADA was explicitly modeled), we apply the doctrine of respondeat superior to claims brought directly under the statute, in part because the historical justification for exempting municipalities from respondeat superior liability does not apply to the Rehabilitation Act, and in part because the doctrine 'would be entirely consistent with the policy of that statute, which is to eliminate discrimination against the handicapped.'"  *Id*. (citation omitted).

Here, it is not contested that S.R. is disabled and the first element in both claims is met.  ECF No. 19 at 17–18.  It is also clear that the District receives federal financial assistance as part of the public school system.  ECF No. 13 at ¶ 7.  Plaintiff specifically argues that the District provided a worse-quality education than to comparable non-disabled students and Ms. Albers discriminated against

S.R. due to his autism.  ECF No. 30 at 12–14.  The question then becomes whether S.R. was denied the benefit of a quality education by reason of his disability.

In sum, and in the light most favorable to Plaintiff, genuine issues of material fact exist as to whether Ms. Albers discriminated against S.R. based on his disability.[5]  Viewed in the light most favorable to Plaintiff, there is sufficient evidence for the trier of fact to find that Ms. Albers was motivated by S.R.'s disability.

Therefore, the Court denies Defendants' Motion for Summary Judgment on the ADA and § 504 claims.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 19) is **DENIED** in part and **GRANTED** in part.

2. Defendants' motion concerning Plaintiff's 42 U.S.C. § 1983 claims against Ms. Albers is **DENIED**.

3. Plaintiff's 42 U.S.C. § 1983 claim against the Pasco School District is **DISMISSED**.

---

[5]   Plaintiff asserts that the ADA and § 504 claims differ because § 504 requires a showing that S.R.'s disability was the sole cause of discrimination.  ECF No. 30 at 15.  Regardless, genuine issues remain for the trier of fact.

4. Defendants' motion concerning Plaintiff's claims against the Pasco School District under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 and under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 729 are **DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** October 23, 2017.



THOMAS O. RICE
Chief United States District Judge